**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**GORILLA VAPES LLC, *et al.*,**

Defendants.

Civil Action No. 25-15715 (ZNQ) (JBD)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon two Motions (1) Defendants Gorilla Vapes LLC ("Gorilla Vapes"), Nick Jurczyk ("Nick"), and Russell Jurczyk's ("Russell") (collectively, "Defendants") Motion for Judgment on the Pleadings (ECF No. 12); and (2) Plaintiff United States of America's (the "Government" or "Plaintiff") Motion to Dismiss (ECF No. 18.) Plaintiff opposed Defendants' Motion for Judgment on the pleadings (ECF No. 17). Defendants filed a consolidated opposition to Plaintiff's Motion to Dismiss and reply in further support of their Motion for Judgment on the Pleadings. (ECF No. 25). Plaintiff filed a reply in further support of its Motion to Dismiss. (ECF No. 27.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **DENY** Defendants' Motion for Judgment on the Pleadings and **GRANT** Plaintiff's Motion to Dismiss.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case involves the Food and Drug Administration's ("FDA") regulation of vaping products. On September 16, 2025, the United States commenced this action seeking a permanent injunction ("PI") against Defendants under the Federal Food, Drug, and Cosmetic Act ("FDCA") to enjoin Defendants from manufacturing, distributing, receiving, and selling adulterated and misbranded electronic nicotine delivery system ("ENDS") products into interstate commerce. (ECF No. 1 ("Compl.) ¶¶ 16–18.)

On November 17, 2025, Defendants answered the Complaint. (Answer, ECF No. 6.) Gorilla Vapes admits that it manufactures and sells ENDS products and further admits that it "purchase[s] liquid nicotine, flavoring, and other components of ENDS products in interstate commerce" and then "use[s] these components to manufacture ENDS products, specifically flavored e-liquids, at [its] facilities for distribution." (*See id.* ¶¶ 3, 21.) Gorilla Vapes also admits that it maintains a website from which consumers can purchase various products. (*Id.* ¶ 19.)

With their Answer, Gorilla Vapes asserts three counterclaims. (*Id.* at 12, 26–37.) In Count I, they allege that the authority granted by Congress to the FDA to "deem" tobacco products subject to the requirements of the FDCA violates the Major Questions Doctrine. (Counterclaim ¶¶ 49–75.) In Count II they allege that the FDA's decision to deem "open-system," or refillable, ENDS products subject to the premarket review requirements of the FDCA was arbitrary, such that the FDA exceeded its statutory authority and violated the Administrative Procedure Act ("APA"). (Counterclaim ¶¶ 76–90.) In Count III, Defendants seek declaratory relief and injunctive relief against the FDA. (Counterclaim ¶¶ 91–94.)

## II. LEGAL STANDARD

### A. RULE 12(c)

A party may move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure "[a]fter the pleadings are closed but within such time as not to delay the trial." Generally, pleadings are "closed" after the complaint and answer are filed. *Horizon Healthcare Servs., Inc. v. Allied Natl Inc.*, Civ. No. 03-4098, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007).

### B. RULE 12(b)(1)

Pursuant to Rule 12(b)(1), a defendant may move to dismiss a claim for lack of subject matter jurisdiction at any time in a case. *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005) (citing Fed. R. Civ. P. 12(b)(1)). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). If the defendant's attack is facial, the court may take all allegations in the complaint as true and "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Liu v. Gonzales*, Civ. No. 07-1797, 2007 WL 2916511, at *3 (D.N.J. Oct. 5, 2007) (citing *Cardio-Medic. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)). Where the challenge is factual, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977 jurisdiction); *see also White-Squire v. United States Postal Serv.*, Civ. No. 08-3486, 2009 WL 313338, at *6–7 (D.N.J. Feb. 5, 2009).

## III. <u>RELEVANT LEGAL BACKGROUND</u>

Before the Court addresses the merits of either motion, it must first explore landmark legislation pertaining to the regulation of tobacco and other products.

### A. THE FDCA

Enacted in 1938, the FDCA gives the FDA the authority to regulate and oversee the safety of food, drugs, and cosmetics. 21 U.S.C. § 301 *et seq*. The FDCA requires the FDA to authorize new drugs before they can be sold in interstate commerce. *See FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 549 (2025).

### B. PRE-TCA REGULATION

In 1996, the FDA, after having expressly disavowed any such authority since its inception, asserted jurisdiction to regulate tobacco products (the "1996 Rule"). *See* 61 Fed. Reg. 44619–45318. In 2000, the Supreme Court struck down the 1996 Rule in *FDA v. Brown & Williamson*, finding that the FDCA did not authorize the regulation of tobacco. *See* 529 U.S. 120, 159–60 (2000).

### C. THE TCA

In response to the Supreme Court's decision in *Brown & Williamson*, Congress signed the Family Smoking Prevention and Tobacco Control Act (the "TCA") into law. TCA, Pub. L. No. 111-31, § 2(31), 123 Stat. 1776, 1779 (2009) (codified at 21 U.S.C. §§ 301 *et seq.*). The TCA authorized the FDA to regulate the manufacture, marketing, and distribution of tobacco products. *See id.*

Pursuant to the TCA, a "tobacco product" is defined as: "any product made or derived from tobacco, or containing nicotine from any source, that is intended for human consumption, including any component, part, or accessory of a tobacco product." 21 U.S.C. § 321(rr)(1). The

TCA empowers the FDA to regulate "tobacco products" in two ways. *See* Pub. L. No. 111-31, 123 Stat. 1776 (2009); *White Lion Invs.*, 604 U.S. at 551. First, the FDA can regulate "cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco." 21 U.S.C. § 387a(b). Second, the FDA can regulate other things that the FDA "deems" a "tobacco product[ ]." *Ibid.* This second avenue is commonly referred to as the "Deeming Rule."

### D. THE DEEMING RULE

On May 10, 2016, the FDA finalized the so-called "Deeming Rule." *See* 81 Fed. Reg. 28973 (2016). The Deeming Rule expanded "covered tobacco products" to include ENDS products such as "E-liquids; atomizers; batteries . . .; cartomizers . . .; digital display/lights to adjust settings; clearomisers; tank systems; flavors; vials that contain e-liquids; and programmable software." *See id.*; *White Lion Invs.*, 604 U.S. at 555. Notably, e-cigarettes (or "vapes") do not burn tobacco. *White Lion Invs.*, 604 U.S. at 553. E-cigarettes instead use a heating element to vaporize liquid nicotine "into a nicotine-infused vapor." *Id.* As a result of the Deeming Rule, any new vape product requires FDA approval before it can be sold. 21 U.S.C. § 387j(a)(1)–(2). If vape products are sold without FDA authorization, the product is considered "adulterated" and "misbranded." *Id.* §§ 387b(6)(A), 387c(a)(6), 331(a). To enforce the prohibition of sale of adulterated and misbranded tobacco products, the FDA can file suit in federal district court to enjoin sales. *Id.* § 332.

## IV. <u>DISCUSSION</u>

### A. MOTION FOR JUDGMENT ON THE PLEADINGS

In opposition to Defendants' Motion for Judgment on the Pleadings, Plaintiff argues that Defendants' Motion is premature, as the pleadings — specifically, Defendants' counterclaims — remain open. (*See generally* Motion for Judgment Opp'n Br.)

Plaintiff is correct. Its deadline to respond to Defendants' Counterclaim was January 16. 2026. *See* Fed. R. Civ. P. 12(a)(2). In lieu of an Answer, however, Plaintiff has filed the pending Motion to Dismiss. Thus, the pleadings have not closed. *See Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) ("The pleadings are closed after an answer is filed, along with a reply to any additional claims asserted in the answer."). A motion for judgment on the pleadings is therefore premature at this time under Rule 12(c). As such, this Court will **DENY** the pending Motion for Judgment on the Pleadings. This denial is without prejudice to Defendants' right to renew their arguments at a later time.

### B. MOTION TO DISMISS

Plaintiff asks this Court to dismiss Defendants' Counterclaim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (*See generally* Motion to Dismiss Moving Br.) Plaintiff argues that it is entitled to sovereign immunity for all claims made against it, including counterclaims, unless that immunity has been specifically waived by an act of Congress. (*Id.*) In opposition, Defendants argue that this Court has jurisdiction over its Counterclaim, as it challenges both the "constitutionality of the TCA's deeming provision and the Deeming Rule." (Motion to Dismiss Opp'n Br. at 8.) Note that, as the basis for jurisdiction for the Counterclaim, Defendants cite to 28 U.S.C. § 1331 and the Declaratory Judgment Act. (ECF No. 6, Counterclaim ¶ 3.)

As a sovereign, the United States is immune from suit unless it consents to be sued. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood,* 312 U.S. 584,

586, (1941)). Its consent to be sued must be "unequivocally expressed," and the terms of such consent define the court's subject matter jurisdiction.[1] *Id.* (quotations omitted).

Plaintiff raises a Rule 12(b)(1) facial challenge to the Court's subject matter jurisdiction, which prompts this Court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inv. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). As the basis for jurisdiction for the Counterclaim, Defendants only cite to 28 U.S.C. § 1331 and the Declaratory Judgment Act in their Answer — not the APA. (ECF No. 6, Counterclaim ¶ 3.) Defendants argue in their briefing that the Administrative Procedure Act ("APA") waives Plaintiff's sovereign immunity and provides subject matter jurisdiction, but this has not been pled in its Counterclaim. In response to a facial challenge, Defendants cannot explain their basis for jurisdiction for the first time in their brief in opposition. *See* Fed. R. Civ. P. 8(a)(1); *Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). As such, this Court will dismiss Defendants' Counterclaim without prejudice.

---

[1] According to the Third Circuit, there is a second, less common exception: the United States may be subject to counterclaims of limited scope when it brings a suit. The court first explained the scope of that exception over 80 years ago:

> It is, of course, true that when the United States . . . initiates a suit, it thereby submits itself to the jurisdiction of the court, but, as to claims against the sovereign, the latter's submission to a court's jurisdiction, because of its suit, draws in only such adverse claims as have arisen out of the same transaction which gave rise to the sovereign's suit.

*In re Monongahela Rye Liquors*, 141 F.2d 864, 869 (3d Cir. 1944).

## V. CONCLUSION

For the reasons stated above, the Court will **DENY** Defendants' Motion for Judgment on the Pleadings and **GRANT** Plaintiff's Motion to Dismiss. Defendants' Counterclaim will be **DISMISSED WITHOUT PREJUDICE**. The Court will grant Defendants leave to file a First Amended Answer and Counterclaim, within 14 days, limited to remedying the jurisdictional defect identified in this Opinion.[2] An appropriate Order will follow.

Date: July 31, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

[2] On any subsequent motion to dismiss Defendants' Amended Counterclaim, the parties shall brief the relevance of the Third Circuit's decisions in *Treasurer of New Jersey v. U.S. Department of Treasury*, 684 F.3d 382 (3d Cir. 2012) and *In re Monongahela Rye Liquors*, 141 F.2d 864, 869 (3d Cir. 1944).